J-A10024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JOSEPH M. BOCCALUPO | |
| Appellant | No. 1846 EDA 2015 |

Appeal from the Judgment of Sentence dated June 4, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006814-2014

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.:                    **FILED SEPTEMBER 25, 2017**

Appellant Joseph M. Boccalupo appeals from the judgment of sentence entered following his conviction for driving under the influence of a drug (hereinafter "DUI") in violation of the Vehicle Code, 75 Pa.C.S. § 3802(d)(2). After careful review, we affirm.

Appellant's bench trial took place on April 2, 2015. The trial court has summarized the testimony of the two witnesses presented at trial as follows:

> [O]n November 24, 2012[,] Appellant's vehicle was observed by Philadelphia Police, [who were] in an unmarked pickup truck, turning off of eastbound Cottman Avenue onto southbound Brous Avenue and nearly striking a vehicle traveling in front of the observing police. Officer Lanz testified that Appellant turned on the red light and did not "pause, stop or hesitate when he turned in front of the traffic."[1] Officer Lanz and his Partner immediately

---

[1] Officer Lanz testified that the accident was only narrowly avoided because the driver of the other car, whose vehicle was between the police and Appellant's, quickly braked. N.T., 4/2/15, at 13. When Appellant pulled into

*(Footnote Continued Next Page)*

pulled Appellant over.[2] Officer Lanz smelled the odor of PCP[3] when he approached Appellant's vehicle. Officer Lanz testified that he knew it was the distinct odor of PCP because he had come into contact with the odor at least a dozen times previously during his twelve (12) years of employment with the department.[4] Officer Lanz also testified that Appellant exhibited symptoms of being under the influence of PCP including slow responses to questioning, slower slurred speech, and a distinctive stare.[5]

Appellant was arrested based on evidence of narcotic intoxication, including the odor or PCP emanating from Appellant's vehicle, the observation of his vehicle almost striking another vehicle, his inability to focus and provide his paperwork,[6] and his slowed response to questioning. When

_(Footnote Continued)_ ———————

the southbound lane of Brous Avenue, he was approximately 10 feet from that car. N.T. at 22. An additional one to one-and-a-half car lengths separated that vehicle from the police pickup truck. N.T. at 22-23.

[2] Officer Lanz testified that he could not remember if Appellant's car swerved during the twenty seconds the police observed him after the near-miss. N.T. at 24.

[3] Though not defined in the record, we assume that the reference to "PCP" is to the drug phencyclidine. N.T. at 31. Appellant does not dispute that PCP is a controlled substance, and the precise nature of the drug at issue here is not an issue in this appeal.

[4] Officer Lanz stated that PCP has a very distinct odor. N.T. at 13-14.

[5] Officer Lanz testified that he has encountered persons under the influence of PCP "[a] dozen of times" (_sic_). N.T. at 13-14. According to the officer, persons under the influence "are slow to respond, they don't always have the focus to them. Sometimes you get their attention, sometimes you can't." N.T. at 14-15.

[6] The Officer testified that

I started to ask [Appellant] if he had his license, registration, insurance. He had kind of like a stare about him; he wasn't focusing on me. I couldn't tell what he was focusing on.

_(Footnote Continued Next Page)_

Appellant was removed from his vehicle, Officer Lanz noted that the odor of PCP was apparent on Appellant's person and that Appellant was unable to maintain his balance. Based on the evidence of narcotic intoxication, it was not safe for Appellant to operate a motor vehicle.

Trial Ct. Op., 7/26/16, at 1-2 (citations omitted).

On cross-examination, Officer Lanz testified that no field sobriety test was performed on Appellant. N.T. at 26-27. The officer also admitted that he is not a qualified Drug Recognition Expert. *Id.* Officer Lanz stated that he saw several cigarette butts on the floor of the car, and that cigarettes can be used to ingest PCP. *Id.* at 16-29. However, no physical evidence from the search of Appellant's car was introduced at trial.

The trial court continues:

Appellant was brought to the Police Detention Unit [("PDU")] for chemical testing following his arrest for driving under the influence. Officer Patrick Farrell of the Accident Investigation Division ("AID") observed Appellant after he was brought to the PDU and testified that Appellant was "disoriented and confused; he had staring eyes, mumbling and repetitive speech, and he had an unsteady walking gait." Officer Farrell testified that he believed Appellant was under the influence of PCP based on his encounters with approximately 200 persons under the influence of PCP during his sixteen (16) year career as a Philadelphia police officer.[7]

*(Footnote Continued)* ———————

He's rambling about his car; trying to look for paperwork. I tried to ask him where he was coming from, where he was going. He wasn't quite fully answering me; he had like a slurred speech, a slurred response.

N.T. at 13.

[7] Officer Farrell testified that he has seen over 200 people under the influence of PCP. N.T. at 29-30. He made no observations of whether there
*(Footnote Continued Next Page)*

Trial Ct. Op. at 2 (citations to the notes of trial testimony omitted).

Officer Farrell testified that he drew two tubes of Appellant's blood for chemical testing. N.T. at 31. However, the results of Appellant's blood test was not introduced into evidence, because the authenticating witness was ill on the date of trial and unavailable to testify. N.T. at 4.[8]

The court found Appellant guilty of violating 75 Pa.C.S. § 3802(d)(2). Appellant was sentenced to serve ninety days to twenty-three months' incarceration.

Appellant filed a timely notice of appeal.[9] He asks us to consider "[w]hether the court below committed an error of law when it found Appellant guilty of violating 75 Pa.[C.S.] § 3802(d)[(]2), because the Commonwealth failed to establish each and every element of the offense beyond a reasonable doubt." Appellant's Brief at 6.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in

*(Footnote Continued)* ⸻

were any odors emanating from Appellant at the time he was tested, but stated that often an odor is not present on persons intoxicated when brought to him for testing. ***Id.*** at at 32-33.

[8] The Commonwealth requested that the trial be bifurcated; the court denied the request. N.T. at 4-6. We note that the trial court had previously denied Appellant's motion to dismiss based Pa.R.Crim.P. 1013(G), in which Appellant claimed that multiple continuances by the Commonwealth had violated his right to a speedy trial.

[9] The trial court did not order Appellant to file a Rule 1925(b) statement of errors complained of on appeal, and Appellant did not file one. The trial court filed a 1925(a) opinion nonetheless.

the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Gause***, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*).

Appellant first argues that the trial court committed reversible error when it permitted lay opinion testimony by an "untrained [p]olice [o]fficer." Appellant's Brief at 10-12. Appellant complains that the officer "had no formal training in drug recognition," and that the effect of a drug on an individual is properly the subject of expert testimony. ***Id.*** at 11.[10]

---

[10] Appellant does not name the officer, and we note that both Officers Lanz and Farrell offered lay testimony regarding whether Appellant was under the influence of PCP. However, we infer that Appellant's main complaint is against the opinion given by Officer Lanz, as Appellant complains that "the Officer believed Appellant was under the influence and unable to safely operate a motor vehicle because in his opinion he smelled PCP." Appellant's Brief at 12.

We find this argument to be waived. Appellant failed to object to the introduction of the testimony of either officer at trial. Our Rules of Appellate Procedure provide that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); **see also Commonwealth v. DiPanfilo**, 993 A.2d 1262, 1268 n.8 (Pa. Super. 2010) ("Our Supreme Court has repeatedly stated that sufficiency claims must be analyzed based on the entire record of evidence actually admitted. Moreover, Appellant waived his challenge to the admissibility of the officer's 'expert' testimony by failing to object at trial" (citations omitted)), **appeal denied**, 40 A.3d 120 (Pa. 2012).

Appellant next argues that the Commonwealth failed to present sufficient evidence of a violation of 75 Pa.C.S. § 3802(d)(2). Appellant's Brief at 12. Appellant asserts that there was insufficient evidence for the court to conclude that Appellant was under the influence of a drug because "there was no PCP found in the car[, t]here was no PCP found on [Appellant]," and "[t]here were no chemical tests in evidence which would demonstrate that [Appellant] had narcotics in his system. The only evidence of narcotic ingestion was the testimony from an untrained Police Officer who stated he smelled what he believed to be PCP." Appellant's Brief at 11.

In addition, Appellant argues that the Commonwealth failed to establish a "nexus that the alleged substance somehow was responsible for the [in]ability of a motorist to operate [his] vehicle in a safe manner."

Appellant's Brief at 12-14 (citing **Commonwealth v. Etchison**, 916 A.2d 1169, 1172-73 (Pa. Super 2007), **aff'd**, 943 A.2d 262 (Pa. 2008) (*per curiam*)). Appellant asserts that there must be some evidence that the drug caused him to drive unsafely, for evidence of the consumption of a narcotic "is not alone sufficient to establish that the driver of a motor vehicle is too impaired to safely operate the vehicle." **Id.** at 14 (citing **Commonwealth v. Gruff**, 822 A.2d 773 (Pa. Super. 2003), **appeal denied**, 863 A.2d 1143 (Pa. 2004)). Appellant claims that here there was no evidence of unsafe driving, because Officer Lanz did not testify that Appellant was speeding or swerving, made unsafe lane changes, or was not able to control his vehicle, and no accident resulted from Appellant's driving. **Id.** at 12-14. According to Appellant, he merely "made a legal turn on a red light; a traffic maneuver that is performed thousands of times a day all across the Commonwealth." **Id.** at 14.

Subsection (d)(2) of the DUI statute provides:

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\* \* \*

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2). This subsection "requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that

the ability to drive is impaired." ***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012). It "does not require that a drug be measured in the defendant's blood, nor does it specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011); ***see also Commonwealth v. Hutchins***, 42 A.3d 302, 308 (Pa. Super.) (court's inability to consider results of blood test "does not mean that there was insufficient evidence to support a conviction under" subsection (d)(2)), ***appeal denied***, 56 A.3d 396 (Pa. 2012); ***Commonwealth v. Williamson***, 962 A.2d 1200, 1204 (Pa. Super. 2008) (Subsection (d)(2) "does *not* require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section"), ***appeal denied***, 980 A.2d 608 (Pa. 2009).

Expert testimony is not required "to establish that the defendant's ability to drive safely was caused by ingestion of a drug." ***Commonwealth v. Hutchins***, 42 A.3d 302, 307 (Pa. Super.) (quoting ***Griffith***, 32 A.3d at 1238), ***appeal denied***, 56 A.3d 396 (Pa. 2012). Rather, whether expert testimony is required to prove a violation of Section 3802(d)(2) —

> must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence, viewed pursuant to the general standard [that expert testimony is necessary when "the jury is confronted with factual issues whose resolution requires knowledge beyond the ken of the ordinary layman." ***Kozak v. Struth***, 531 A.2d 420, 422 (Pa. 1987)].

*Griffith*, 32 A.3d at 1239; *see DiPanfilo*, 993 A.2d at 1267 n.5 (stating that, because marijuana is a commonly-known drug, "if a police officer stopped a driver who was driving erratically, and the driver then rolled down his window and greeted the officer through a cloud of marijuana smoke, showing the typical signs of heavy marijuana use, it would be difficult to imagine that expert testimony would be necessary to establish the link between the erratic driving and the driver's marijuana use"). Therefore, convictions under subsection 3802(d)(2) have been sustained even without expert testimony or chemical evidence showing an influencing level of drugs in the defendant's system. *See, e.g.*, *Griffith*, 32 A.3d at 1239-40 (violation of subsection 3802(d)(2) sustained where officer testified that defendant was off-balance, had difficulty standing, and failed three field sobriety tests; only a therapeutic concentration of prescription medication was found in defendant's blood). Conversely, we have reversed a conviction under the same subsection where the Commonwealth presented no evidence that the defendant was under the influence of the drugs found in his system. *See Etchison*, 916 A.2d at 1172 (reasoning that Commonwealth's case relied on drug tests indicating that defendant had ingested marijuana previously but which were inconclusive as to the influence the drug still had on the defendant).

As expressed by the trial court in this case:

>    Evidence was presented that Appellant was observed driving erratically by the arresting Officer. The Officer immediately noted an odor of PCP emanating from Appellant's vehicle after Appellant opened his window during the traffic stop. The Officer testified that Appellant was unable to focus on his questioning and failed to provide his license and vehicle paperwork when it was requested. The Officer also noted that Appellant's speech was slowed and slurred and the odor of PCP remained on his person after he was removed from his vehicle. . . .
>
>    The Officer who performed chemical testing on the Appellant following his arrest also noted similar evidence of intoxication. The AID Officer testified that Appellant was disoriented and confused when he was brought for testing. The Officer also testified that Appellant had staring eyes, mumbling and repetitive speech, and an unsteady walking gait.

Trial Ct. Op. at 3. The trial court concluded that this evidence was sufficient to convict Appellant under Section 3802(d)(2).

We agree. This evidence, taken in the light most favorable to the Commonwealth, is sufficient to prove a violation of the statute. Officer Lanz observed Appellant make a very unsafe turn, smelled the strong, unique odor of PCP on Appellant's person, and observed Appellant exhibit signs that he was under its influence. Officer Farrell corroborated the latter observation. Assuming the truth of the officers' testimony, as we must, *see Gause*, 164 A.3d at 540, the evidence establishes that Appellant was under the influence of a drug that impaired his ability to drive. *Tarrach*, 42 A.3d at 345. We reiterate that the Commonwealth may sustain its burden by circumstantial evidence alone, *see Gause*, 164 A.3d at 541, and that no

chemical evidence or expert testimony is required to support the conviction.

***Griffith***, 32 A.3d at 1239; ***Hutchins***, 42 A.3d at 307.[11]

Judgment of sentence affirmed.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>9/25/2017</u>

---

[11] We note that while the exact effects of PCP upon a person may be beyond the ken of an average layperson, ***see Griffith***, 32 A.3d at 1239, the opinion of the officers was admitted into evidence and a factfinder may therefore rely upon it. ***Gause***, 164 A.3d at 541. Moreover, Officer Lanz's testimony that PCP emanates a strong odor, and that this odor was wafting from Appellant's person, is within the realm of lay understanding. ***See DiPanfilo***, 993 A.2d at 1267 n.5.